1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**O'HAGAN MEYER**
Clint D. Robison (SBN 158834)
Samantha Squillante (SBN 318582)
21550 Oxnard Street, Suite 1050
Woodland Hills, CA 91367
Telephone: (213) 306-1610
Facsimile: (213) 306-1615
crobison@ohaganmeyer.com
ssquillante@ohaganmeyer.com

Attorneys for Defendants
Bebe Stores, Inc. and BB Brand Holdings LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION, a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>BEBE STORES, INC., a California Corporation; BB BRAND HOLDINGS LLC, a Delaware Limited Liability Company; and DOES 1-10, inclusive,<br><br>Defendants, | Case No.: 2:21-cv-04355-FMO-JPR<br><br>**DEFENDANTS BEBE STORES, INC. AND BB BRAND HOLDINGS LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DIMISS UNDER F.R.C.P. RULE 12(b)(6)**<br><br>[*Filed concurrently herewith:Notice of Motion; Declaration of Samantha L. Squillante in Support of Defendant's Motion; Request for Judicial Notice*]<br><br>Hearing Date: Monday August 30, 2021<br>Hearing Time: 1:30 p.m.<br>Courtroom: 6D<br>Judge: Fernando M. Olguin |

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................. 1

II.  MATERIAL ALLEGATIONS IN THE COMPLAINT ......................... 2

III. LEGAL STANDARD ........................................................................... 5

IV.  LEGAL ARGUMENT ........................................................................... 5

    A.  THE TRADE DRESS CLAIMS FAIL AS A MATTER OF LAW .............. 5

        1.  DECKERS FAILS TO ALLEGE FACTS SHOWING HOW THE
           ALLEGED FYS TRADE DRESS IS NON-FUNCTIONAL ................ 8

        2.  DECKERS FAILS TO ALLEGE SECONDARY MEANING .............. 10

        3.  DECKERS FAILS TO ALLEGE CUSTOMER CONFUSION ............. 11

    B.  DECKERS' UNFAIR COMPETITION CLAIMS FAIL AS A MATTER
       OF LAW OR ARE PREEMPTED .......................................................... 15

        1.  THE PATENT ACT PREEMPTS BOTH UNFAIR COMPETITION
           CLAIMS ..................................................................................... 15

        2.  THE UNFAIR COMPETITION CLAIMS ALSO FAIL AS A
           MATTER OF LAW BECAUSE THEY RELY ON THE SAME
           FAULTY TRADE DRESS THEORY AS THE TRADE DRESS
           CLAIMS ..................................................................................... 17

        3.  DECKERS ALSO LACKS STANDING TO ASSERTS ITS UCL
           CLAIM IN COUNT IV ................................................................ 18

    C.  DECKERS FAILS TO SUPPORT ITS WILLFULNESS ALLEGATIONS
       IN ITS PATENT INFRINGEMENT CLAIM, AND THE COURT SHOULD
       DISMISS THAT PORTION OF COUNT V ............................................ 18

V.   CONCLUSION ................................................................................... 19

CERTIFICATE OF SERVICE ................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Applied Underwriters, Inc.. v. Lichtenegger*,
  913 F.3d 884, 897 (9th Cir. 2019) ...................................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662, 678 (2009)..................................................... 5, 14

*Aurora World, Inc. v. Ty Inc.*,
  719 F. Supp. 2d 1115, 1165–66 (C.D. Cal. 2009) ..............................17

*Bell Atlantic v. Twombly*,
  550 U.S. 544, 555 (2007)..................................................... 5, 14

*Benebone LLC v. Pet Qwerks, Inc.*,
  No. 8:20-cv-00850, 2020 WL 8732321 at *5 (C.D. Cal. Sept. 3, 2020)...............5

*Birdsong v. Apple, Inc.*,
  590 F.3d 955, 959 (9th Cir. 2009); Cal. Bus. & Prof. Code § 17204 ...............18

*Blumenthal Distributing, Inc. v. Herman Miller, Inc.*,
  963 F.3d 859, 864 (9th Cir. 2020) ........................................................7

*Brinkerhoff v. L'Oreal USA, Inc.*,
  417 F. Supp. 3d 1308, 1313 (S.D. Cal. 2019)......................................18

*Card Tech Intern., LLLP v. Provenzano*,
  No. CV 11-2434, 2012 WL 2135357, at *26 (C.D. Cal. June 7, 2012) ..............11

*Cisneros v. Instant Capital Funding Group, Inc.*,
  263 F.R.D. 595, 603 (E.D. Cal. 2009) .....................................................5

*Cleary v. News Corp.*,
  30 F.3d 1255, 1263–64 (9th Cir. 1995) ...............................................17

*Crafty Prods., Inc. v. Fuqing Sanxing Crafts Co.*,
  839 F. App'x 95 (9th Cir. 2020)...........................................................5

*Crafty Prods., Inc. v. Michaels Companies, Inc.*,  ...................................................5
  424 F. Supp. 3d 983, 989 (S.D. Cal. 2019)

*Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*,
  CV 15-769 PSG, 2015 WL 12731929, at *4–5 (C.D. Cal. May 8, 2015).... passim

*Deckers Outdoor Corp. v. J.C. Penny Co.*,
    45 F. Supp. 3d 1181, 1189 (C.D. Cal. 2014) .......................................19

*Disc Golf Ass'n v. Champion Discs*,
    158 F.3d 1002, 1007 (9th Cir. 1998) .......................................7

*Eagle Snacks, Inc. v. Nabisco Brands, Inc.*,
    625 F. Supp. 571, 584 (D.N.J. 1985) .......................................12

*Eastland Music Group, LLC v. Lionsgate Entertainment, Inc.*,
    707 F.3d 869, 871  (7th Cir. 2013) .......................................14

*Ezaki Glico Kabushiki Kaisha v. Lotte International America Corp.*,
    986 F.3d 250, 255 (3d Cir. 2021) .......................................6

*Farm Credit Servs. v. Am. State Bank*,
    339 F.3d 764, 767 (8th Cir. 2003) .......................................5

*Fortres Grand Corp. v. Warner Bros. Entertainment Inc.*,
    763 F.3d 696, 700 (7th Cir. 2014) .......................................14

*Gayle v. Allee*,
    No. 18 Civ. 3774, 2021 WL 120063, at *3–6 (S.D.N.Y. Jan. 13, 2021).............14

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    136 S. Ct. 1923, 1933 (U.S. 2016).......................................19

*In re Med. Capital Securities Litigation*,
    842 F. Supp. 2d 1208, 1210 (C.D. Cal. 2012) .......................................5

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310, 323 (2011) .......................................18

*Lippitt v. Raymond James Fin. Servs., Inc.*,
    340 F.3d 1033, 1043 (9th Cir. 2003) .......................................15

*Millennium Labs., Inc. v. Ameritox, Ltd.*,
    817 F.3d 1123, 1126–27 n.1 (9th Cir. 2016) ................................. 6, 7, 8

*Nora Bevs., Inc. v. Perrier Group of America, Inc.*,
    164 F.3d 736, 743 (2d Cir. 1998) .......................................9

*Qualitex Co. v. Jacobson Prod. Co.*,
    514 U.S. 159, 164 (1995).......................................6

iii

*Rehrig Pac. Co. v. Polymer Logistics (Israel), Ltd.*,
   No. CV 19-4952-MWF, 2019 WL 8161141, at *3........................................ 18 ,19

*Schwinn Bicycle Co. v. Diversified Prod. Corp.*,
   740 F. Supp. 517, 520 (N.D. Ill. 1990) .................................................12

*Sebastian Brown Productions LLC v. Muzooka Inc.*,
   No. 15-CV-01720, 2016 WL 949004, at *15 (C.D. Cal. Mar. 14, 2016) ...........17

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134, 1147 (9th Cir. 1997) .................................................15

*Spark Indus., LLC v. Kretek Int'l, Inc.*,
   No. CV 14-5726-GW ASX, 2014 WL 4365736 (C.D. Cal. Aug. 28, 2014) .......12

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*,
   7 F.3d 1434, 1439–40 (9th Cir. 1993) ...................................... 15, 17

*Uniroyal, Inc. v. Kinney Shoe Corp.*,
   453 F. Supp. 1352, 1355 (S.D.N.Y.1978) .............................................12

*Virgin Scent, Inc. v. Bel Air Natruals Care Corp.*,
   CV 17-08284-AB, 2018 WL 5264145, at *4–5 (C.D. Cal. Feb. 8, 2018)....... 8, 10

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
   529 U.S. 205, 209 (2000)................................................... 6, 8, 10

**Statutes**

15 U.S.C. §  1127 ...............................................................6
35 U.S.C. § 173 ...............................................................7

**Rules**

Fed. R. Civ. P. 12(b)(6)...................................................2, 5

**DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

## I.   INTRODUCTION

Basketball legend Michael Jordan once explained in an ad for his iconic Air Jordan sneakers that "[i]t's not about the shoes, it's about what you do in them."[1] However, for Deckers, it's about the shoes.  A frequent litigant over its footwear, Deckers now directs its aim at Bebe.

Deckers alleges that the Jeanna style slide slipper ("Jeanna")—which Bebe sells under its bebe® brand—infringes an alleged trade dress associated with Decker's UGG®-branded Fluff Yeah Slide slipper ("FYS").[2]  Deckers brings trade dress infringement actions against Bebe under the Lanham Act and at common law.  Deckers also asserts claims against Bebe for alleged unfair competition under California's Unfair Competition Law ("UCL") and at common law.  Finally, citing a sparse design patent for the FYS, Deckers asserts a patent infringement claim against Bebe as well.  These claims fail, as a matter of law, for several reasons.

Both trade dress infringement claims in Counts I and II (statutory and common law, respectively) fail for at least three reasons.  First, Deckers fails to allege how the purported FYS trade dress is nonfunctional.  Indeed, as discussed more below, Deckers has copied—in places verbatim—allegations supporting its trade dress claim that this Court has previously declared insufficient as a matter of law in other cases involving Deckers.  Second, Deckers fails to allege facts demonstrating that the alleged FYS trade dress has achieved secondary meaning.  Third, the Jeanna and the FYS both prominently display their respective brand names on the slipper itself and are substantively different in numerous ways.  It is

---

[1]   *See* https://www.youtube.com/watch?v=ot4d2RmQQQQ, at 0:47–0:51 (depicting the 2008 Air Jordan commercial) (last accessed June 16, 2021).  For the reasons discussed in Bebe's Request for Judicial Notice, this Court may take judicial notice of the YouTube video referenced herein.

[2]   Deckers alleges, upon information and belief, that Bebe sells other (unspecified) products that infringe Deckers' patents or trade dresses.  (ECF 1 ¶ 19).  Because Deckers provides no factual support for this claim, Bebe's Motion to Dismiss will focus solely on Deckers' claims concerning the Jeanna.

implausible that a consumer, looking at the slippers side-by-side, would be confused that the Jeanna (produced by Bebe under the bebe® brand) and the FYS (produced by Deckers under the UGG® brand) are different products produced by different manufacturers.

Deckers' unfair competition claims in Counts III and IV (statutory and common law, respectively) also fail.  They are either (a) preempted by the Patent Act claim in Count V; or they (b) fail as a matter of law because they rely on the same faulty trade dress theory as Counts I and II.  In short, if the Court allows the Patent Act claim to remain, that claim preempts the unfair competition claims.  If, on the other hand, it dismisses the trade dress infringement claims (Counts I and II) for the reasons stated above, then the unfair competition claims—which rely on the same theory—fail as well.

Finally, the Court should dismiss the portion of Deckers' patent claim (Count V) that alleges willfulness.  As discussed more below, Deckers fails to allege facts demonstrating that Bebe had pre-suit knowledge of Deckers' alleged design patent for the FYS.  This is a pre-requisite for a willful infringement claim, and without it, the willfulness claim fails.

## II.   MATERIAL ALLEGATIONS IN THE COMPLAINT

Deckers designs and sells footwear under several brand names.  (ECF 1 ¶ 9).  It acquired the UGG® brand in the mid-1990s and has been selling footwear under that brand ever since.  In 2018, Deckers began selling the FYS, an open-backed, open-toed slipper with a "furry" exterior.  (ECF 1 ¶ 22); *see also* Declaration of Samantha Squillante in Support of Defendants' Motion to Dismiss (hereinafter Squillante Decl.) **Exhibit 1** (a printout of the UGG webpage offering the FYS for sale online, as well as screenshots from that page).[3]  Deckers claims that the FYS

---

[3] Defendants have filed, along with this Motion and Memorandum, a Request for Judicial Notice in which they request that this Court take judicial notice of Exhibit 1 and other items attached as Exhibits to this Memorandum.

**DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

has several design elements which (collectively) create the alleged FYS trade dress. These elements include:

    a.   A slipper and sandal combined into a statement shoe made famous by the UGG® brand;

    b.  A platform, sling back slide;

    c.  A platform sole with a furry footbed and furry perimeter sides;

    d.  A wide vamp having a furry exterior;

    e.  An open toe; and

    f.  An elastic heel strap extending from one side of the vamp to the other.

*Id*. at ¶ 22(a)–(f).

Deckers claims that the alleged FYS trade dress is "non-functional in its entirety, visually distinctive, and unique in the footwear industry" and qualifies as a trade dress under the Lanham Act and California common law. (*Id*. ¶¶ 22–23). It also claims that the alleged FYS trade dress is "neither essential to its use or purpose", does not "affect the cost or quality of the shoe", and "provides no cost advantages to the manufacturer or utilitarian advantages to the customer." (*Id*. ¶ 24).

Deckers alleges several ways in which the FYS has received publicity, including through Deckers' marketing, celebrity usage, media attention, and sales. (*Id*. ¶¶ 25–27). Deckers claims that, as a result of this exposure, the alleged FYS trade dress has achieved secondary meaning, "which serves to identify Deckers as the exclusive source of footwear featuring said trade dress." (*Id*. ¶ 27).

Deckers alleges that it owns a design patent (U.S. Patent No. D866,941 (the "Patent")) for the FYS. (*Id*. ¶ 51). It claims to have attached a copy of the Patent to its Complaint, but it failed to do so. Bebe obtained a copy of the alleged patent from separate patent litigation between Deckers and a third party and attaches it to this Motion as Squillante Decl. **Exhibit 2**.

Defendant BB Brand Holdings LLC ("BB Holdings") owns the bebe® trademark.  Defendant Bebe Stores, Inc. ("Bebe Stores") is a member of BB Holdings.  BB Holdings grants certain entities a license to manufacture and distribute footwear bearing the bebe® mark.  One of those entities is Zigi USA LLC, which manufactures the Jeanna, a slide bearing the bebe® mark and which is at issue in the Complaint.[4]

A picture of the Jeanna appears on page five of the Complaint in this case. (ECF 1 at 5).  While Deckers does not describe the Jeanna in the Complaint, a webpage offering the Jenna for sale (of which the Court can take judicial notice), includes the following characteristics of the slipper:

- Faux fur upper with rhinestone bebe® logo text detail;
- Open toe;
- Adjustable slingback strap with hook-and-loop closure;
- Lightly cushioned footbed; and
- Man-made outsole

*See* Squillante Decl. **Exhibit 3** (a printout of an Amazon sales page offering the Jeanna for sale, as well as screenshots from that page).

Deckers alleges, upon information and belief, that Bebe is one of its competitors and "introduced the Jeanna into the stream of commerce in an effort to exploit Decker's goodwill and the reputation of the [FYS]." (*Id*. ¶ 28).  It alleges that the Jeanna "bear[s] confusingly similar reproductions of the [alleged FYS trade dress], such as to cause a likelihood of confusion as to the source, sponsorship or approval by Deckers" of the Jeanna.  (*Id*. ¶ 29).  It then concludes that the  Jeanna is "likely to lead to and result in confusion, mistake or deception, and is likely to cause the public to believe" that the Jeanna is "produced,

---

[4] For ease, we will reference Bebe throughout this brief.  However, it should be noted that Zigi is the party that manufactures and distributes the Jenna pursuant to a license granted to it by BB Holdings.

sponsored, authorized, or licensed by or [is] otherwise connected or affiliated with Deckers." (*Id*, ¶ 31). Finally, Deckers alleges, upon information and belief, that Bebe has sold the Jeanna nationwide and in this judicial district. (ECF 1 ¶ 18).

## III.   LEGAL STANDARD

"A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the Complaint." *Crafty Prods., Inc. v. Michaels Companies, Inc.*, 424 F. Supp. 3d 983, 989 (S.D. Cal. 2019), *aff'd sub nom. Crafty Prods., Inc. v. Fuqing Sanxing Crafts Co.*, 839 F. App'x 95 (9th Cir. 2020) (citing Fed. R. Civ. P. 12(b)(6)) (other citations omitted). To survive a 12(b)(6) motion, the claim must be "plausible on its face" meaning that it includes "enough facts, taken as true to allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct." *In re Med. Capital Securities Litigation*, 842 F. Supp. 2d 1208, 1210 (C.D. Cal. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Merely asserting the "labels and conclusions" or providing a "formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Additionally, the Court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions case in the form of factual allegations." *Cisneros v. Instant Capital Funding Group, Inc.*, 263 F.R.D. 595, 603 (E.D. Cal. 2009) (quoting *Farm Credit Servs. v. Am. State Bank*, 339 F.3d 764, 767 (8th Cir. 2003)).

## IV.   LEGAL ARGUMENT

### A.   THE TRADE DRESS CLAIMS FAIL AS A MATTER OF LAW.

Deckers asserts claims for trade dress infringement under the Lanham Act and under California common law (Counts I and II). "Trade dress claims under California common law are subject to the same analysis as federal trade dress

claims." *Benebone LLC v. Pet Qwerks, Inc.*, No. 8:20-cv-00850, 2020 WL 8732321 at *5 (C.D. Cal. Sept. 3, 2020) (citing *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, No. CV 15-769 PSG (SSx), 2015 WL 12731929, at *3 (C.D. Cal. May 8, 2015)).  Therefore, Bebe addresses these claims as one.

To state a claim for trade dress infringement, Deckers must allege "(1) that the claimed dress is nonfunctional; (2) that the claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of consumer confusion." *Millennium Labs., Inc. v. Ameritox, Ltd.*, 817 F.3d 1123, 1126–27 n.1 (9th Cir. 2016).

Trademark law, which Congress codified in the Lanham Act, "protects not inventions or designs per se, but branding." *Ezaki Glico Kabushiki Kaisha v. Lotte International America Corp.*, 986 F.3d 250, 255 (3d Cir. 2021).  The Act protects "any word, name symbol, or device, or any combination thereof" which serves to "identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods", which it defines as "trademarks." 15 U.S.C. § 1127.  While trademark law protects *marks* that distinguish one competitor's product from another, patent law protects the *design* of those products themselves.  As the Supreme Court has explained, "[i]t is the province of patent law, not trademark law, to encourage invention by granting inventors a monopoly over new product designs or functions for a limited time." *Qualitex Co. v. Jacobson Prod. Co.*, 514 U.S. 159, 164  (1995).

Nevertheless, over time courts have extended the trademark protections of the Lanham Act to include "not just word marks, such as 'Nike,' and symbol marks, such as Nike's 'swoosh' symbol, but also 'trade dress'—a category that originally included the packaging, or 'dressing,' of a product" but that can also include "the design of a product." *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,

**DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

529 U.S. 205, 209 (2000).  Nevertheless, trade dress protections are "limited to protecting the owner's goodwill and preventing customers from being confused about the source of a product." *Ezaki*, 986 F.3d at 256.  They are not intended "to create patent-like rights in innovative aspects of product design." (citation omitted).  If allowed to do so, trade dress protections would circumvent the time limitations placed on design patents (15 years) because the protections of the Lanham Act (i.e., trademark and trade dress) have no time limits.  *Id.*; *see also* 35 U.S.C. § 173 (proving duration for a design patent).

To mitigate this risk, courts require parties seeking trade dress protection for a *product design* to show that the design is "nonfunctional."  *Blumenthal Distributing, Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 864 (9th Cir. 2020) ("*Blumenthal*") (citations omitted).  This prevents "sellers from permanently monopolizing 'functional' designs that they have not patented, or for which patents have expired."  *Id.* (citations omitted).  Courts have identified two types of "functionality" that, if present, make it impossible for a party to claim trade dress protection: utilitarian and aesthetic.  *Blumenthal*, 963 F.3d at 865. If the alleged trade dress has a utilitarian function, the analysis ends and no trade dress protection applies.  *Id.*  If the alleged trade dress does not have a utilitarian function, the court then assesses aesthetic functionality by asking whether trade dress protection "would impose a significant non-reputation-related competitive disadvantage."  *Id.* at 1129 (citation omitted).

"A claimed trade dress has utilitarian functionality if it is essential to the use or purpose of a product or affects its cost or quality."  *Id.* (citations omitted).  Courts follow a two-step process by first assessing utilitarian functionality. *Millennium Labs.*, 817 F.3d at 1128–29. The Ninth Circuit applies a four-factor test to address utilitarian functionality: "(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising

1    touts the utilitarian advantages of the design, and (4) whether the particular design

2    results from a comparatively simple or inexpensive method of manufacture." *Id.*

3    (citations omitted). "No one factor is dispositive; all should be weighed

4    collectively." *Id.* (citations omitted). However, "[a] product feature need only

5    have ***some*** utilitarian advantage to be considered functional." *Disc Golf Ass'n v.*

6    *Champion Discs*, 158 F.3d 1002, 1007 (9th Cir. 1998). Ultimately, ***the plaintiff***

7    bears the burden of pleading sufficient facts alleging *how* the alleged trade dress is

8    non-functional. *Virgin Scent, Inc. v. Bel Air Natruals Care Corp.*, CV 17-08284-

9    AB, 2018 WL 5264145, at *4–5 (C.D. Cal. Feb. 8, 2018) (citing cases) (dismissing

10   a trade dress case on defendants 12(b)(6) motion and holding that the plaintiff

11   failed to plead facts showing how the alleged trade dress was non-functional); *see*

12   *also Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, CV 15-769 PSG, 2015 WL

13   12731929, at *4–5 (C.D. Cal. May 8, 2015) ("*Fortune Dynamic*") (same).

14        Aesthetic functionality, on the other hand, is where the purported trade dress

15   has "'an aesthetic purpose wholly independent of any source identifying function,'

16   such that the trade dress's protection under trademark law 'would impose a

17   significant non-reputation-related competitive disadvantage' on its owner's

18   competitors.'" *Id.* (quoting *Millennium Labs., Inc. v. Ameritox, Ltd.*, 817 F.3d

19   1123, 1129, 1131 (9th Cir. 2016)).

20        Additionally, a party seeking trade dress protection must allege facts

21   showing that its alleged trade dress has achieved secondary meaning. This occurs

22   where "in the minds of the public, the primary significance of a [trade dress] is to

23   identify the source of the product rather than the product itself." *Wal-Mart*, 529

24   U.S. at 211.

25        **1.   DECKERS FAILS TO ALLEGE FACTS SHOWING HOW THE**
              **ALLEGED FYS TRADE DRESS IS NON-FUNCTIONAL.**
26

27   Deckers' allegations concerning the alleged FYS trade dress are made up of

28

legal conclusions that the alleged trade dress is "non-functional in its entirety", "neither essential to its use or purpose", and does not "affect the cost or quality of the shoe." (ECF 1 ¶¶ 23–24). While Deckers identifies the specific component parts of the alleged FYS trade dress (*e.g.*, the combined slipper/sandal design, platform, sling back slide, platform sole with furry footbed and perimeter sides, wide vamp and furry exterior, open toe, and elastic heel strap), it fails to allege *facts* to support its *legal conclusion* that none of these items serve a functional purpose. This is a problem for several reasons.

First, common shapes or generic designs—such as "the shape of a product that conforms to a well-established industry custom"—are not protectible as trade dress. *Nora Bevs., Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 743 (2d Cir. 1998). Certain components of the alleged FYS trade dress are basic, generic, and ubiquitous elements of any shoe and are used widely in the footwear industry. Items such as a platform are a necessary and common element of any piece of footwear. While sandals and flip flops tend not to have perimeter sides, most other types of footwear do. Countless sandals, flip flops, slides, slippers, and other footwear feature an open toe. And the elastic back strap is a common element of various types of formal and informal footwear. None of these generic footwear elements qualify as protectible trade dress.

Second, many of the elements of the alleged FYS trade dress serve a utilitarian purpose. The platform protects the wearer's foot from the ground below. The elastic heel strap and the wide vamp secure the wearer's foot in the FYS. The vamp and sheepskin also serve the functional purpose of providing warmth to the foot. In the end, it is Deckers' burden—at the pleading stage—to allege enough facts to plausibly assert that these items serve other, nonfunctional, non-utilitarian purposes. It has not even tried to do so.

A few years ago, this Court dismissed a striking similar complaint by

**DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1   Deckers seeking trade dress protection for its UGG® Bailey Button boot design.

2   *Fortune Dynamic, Inc.*, 2015 WL 12731929 at *1.  For comparison, Bebe attaches

3   Deckers' complaint from that case as Squillante Decl. **Exhibit 4**.  In *Fortune*

4   *Dynamic*, Deckers merely listed the elements of the alleged trade dress and labeled

5   them non-functional.  *Id*. at *4.  This Court held that Deckers failed to provide

6   facts showing *how* these elements were non-functional.  *Id*.  It noted that this was

7   particularly problematic "because some of the features of the claimed trade dress

8   do perform a utilitarian function in certain contexts (*i.e.*, buttons or adjustable

9   overlapping flaps)."

10   The Court need only compare the Complaint in this case with the one in

11   *Fortune Dynamic* to see the similarities, and the same lack of factual support for

12   Deckers' claim of non-functionality over the elements of the alleged FYS trade

13   dress.  As it did in *Fortune Dynamic*, Deckers merely concludes that all of the

14   elements of the alleged FYS trade dress are non-functional, even while some

15   clearly serve a functional purpose.  This Court has made clear that it is the

16   *plaintiff's* obligation to "plead non-functionality in order to state a claim for trade

17   dress infringement" and that a failure to do so can result in the dismissal of a claim.

18   *Id*. at *5; *Virgin Scent, Inc.*, 2018 WL 5264145 at *5.  Deckers fails to do so here

19   and, as a result, its trade dress claims fail as a matter of law.

20   **2.   DECKERS FAILS TO ALLEGE SECONDARY MEANING.**

21   A product's design is not "inherently distinctive" for purposes of trade dress

22   protection.  *Wal-Mart*, 529 U.S. at 212.  Thus, a plaintiff seeking trade dress

23   protection for the design of a product—as Deckers does here for the alleged FYS

24   trade dress—must prove that the design has achieved secondary meaning.[5]   As

25

26   [5] Deckers appears to have identified every constituent element of the FYS as
27   part of the alleged FYS trade dress, aside from maybe the sole of the slipper itself.
     Accordingly, it is fair to say that it is seeking trade dress protection for the design
     of the FYS itself.  Indeed, Deckers alleges that the alleged FYS trade dress is
28   comprised of the "design elements" comprising the FYS.  (ECF ¶ 22).

**DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1  with functionality, the plaintiff must plead enough facts to plausibly allege that the
2  alleged trade dress has achieved secondary meaning.  Deckers fails to do so.

3      Again, it is helpful to compare the allegations in *Fortune Dynamic* to those
4  in this case.  *Compare* Exh. 4 *with* ECF 1.  Deckers' complaint in this case repeats
5  (at times verbatim) the same allegations in support of its claim of secondary
6  meaning that it alleged in *Fortune Dynamic*.  These include celebrity appearances
7  with UGG®-branded materials, various marketing efforts, and general claims
8  about the sales of the FYS.  (ECF 1 ¶¶ 25–27).  It alleged the same things in
9  *Fortune Dynamic*.  *See* Exh. 1 ¶¶ 23–25.  This Court held that those allegations
10  were conclusory in *Fortune Dynamic* and should do so again here because they are
11  nearly identical.  *See Fortune Dynamic, Inc.*, 2015 WL 12731929 at *5.  Because
12  Deckers' allegations in this case mirror the ones that the Court dismissed in
13  *Fortune Dynamic*, this Court should do the same.

14      More importantly, secondary meaning occurs where the customer identifies
15  the alleged trade dress with the plaintiff.  Deckers has not alleged any facts to
16  suggest why a customer, viewing the FYS and the alleged FYS trade dress, would
17  associate that item *with Deckers*.

18      **3.**    **D**ECKERS **FAILS TO ALLEGE CUSTOMER CONFUSION.**

19      "Likelihood of confusion is the touchstone for trade dress infringement" and
20  an element of a trade dress infringement claim.  *Card Tech Intern., LLLP v.*
21  *Provenzano*, No. CV 11-2434, 2012 WL 2135357, at *26 (C.D. Cal. June 7, 2012).
22  The images in the Complaint, as well as those of which Bebe asks the Court to take
23  judicial notice in Exhibits 1 and 2, make it clear that no reasonable consumer
24  would be confused as to the source of the FYS and the Jeanna when viewing them
25  side-by-side.  *See also* Squillante Decl. **Exhibit 5** (including photographs of the
26  FYS and the Jeanna side-by-side).

27      First, both slippers prominently display their competing brand names on the

28

**DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF**

slipper itself.  The three images of the FYS on page 6 of the Complaint all show the elastic heel strap which has the name "UGG" in bold letters repeated a total of six times (three times on either side of the strap).  (ECF 1 ¶ 23); *see also* Exhs. 1, 3, and 5.  Likewise, the Jeanna prominently displays the bebe® mark as many times on its heel strap (on either side of the strap) and on the platform of the slipper.  (*Id*. ¶ 18); Exhs. 1, 3, and 5.  Additionally, the Jeanna also includes the bebe® mark on the upper portion of the slipper (called the "vamp") stitched in rhinestone.  (*Id*.); Exhs. 1, 3, and 5.  The UGG® and bebe® marks also appear on the sole of the FYS and the Jeanna, respectively.  Exhs. 1, 3, and 5.

The presence of both the UGG® and bebe® marks cuts heavily against any claim of customer confusion.  "The presence of such well known trademarks and trade dress prominently displayed on a product may defeat a claim of likelihood of confusion, especially where the purported mark is descriptive." *Eagle Snacks, Inc. v. Nabisco Brands, Inc.*, 625 F. Supp. 571, 584 (D.N.J. 1985) (citing *Uniroyal, Inc. v. Kinney Shoe Corp.*, 453 F. Supp. 1352, 1355 (S.D.N.Y.1978)).  Indeed, numerous courts have "held that the prominent placement of a distinguishing word mark or brand name on arguably similar trade dress can dispel a likelihood of confusion." *Spark Indus., LLC v. Kretek Int'l, Inc.*, No. CV 14-5726-GW ASX, 2014 WL 4365736, at *15 (C.D. Cal. Aug. 28, 2014) (citing cases).

Even if Deckers alleged facts to show that the alleged FYS trade dress has achieved secondary meaning and consumers associate Deckers as the source of the FYS (it has not), it still "cannot complain if another uses that trade dress but dispels any possible confusion by advising consumers of the actual source" with its own bebe® mark, because "[t]hat is a function of logos and trademarks." *Schwinn Bicycle Co. v. Diversified Prod. Corp.*, 740 F. Supp. 517, 520 (N.D. Ill. 1990). That is the case here.  Both Bebe and Deckers display their brand names

**DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

prominently on their respective slippers, and Bebe does so in several locations and in a unique and eye-catching form on the vamp.  It is implausible that a consumer would be confused between the two products, or to the source of either, in light of the presence of these marks.

Deckers offers no facts to suggest otherwise—only the legal conclusion that consumers may be confused.  In fact, what it does offer about Bebe in the Complaint actually cuts against that claim.  Deckers claims that Bebe imported the Jeanna into the United States and has sold the Jeanna—in its stores and online—to consumers nationwide.  (ECF 1 ¶ 18).  Thus, the more plausible inference— derived from the face of the Complaint—is that both the UGG® and bebe® brands are recognizable to customers nationwide.  Thus, a consumer, seeing FYS and the Jeanna side-by-side, with their prominently displayed and recognizable marks, is unlikely to be confused as to the source of either product.

In addition to the competing marks, the FYS and the Jeanna have significant design differences.  For one, while the FYS has a thick, *un-adjustable*, elastic heel strap, the Jeanna has an *adjustable* heel strap that is looped through a metal hook and loop closure.  *Compare* ECF 1 ¶ 23 *with* ¶ 18 & Exhs. 1, 3, and 5.  The Jeanna's back-strap also has Velcro that connects one side of the strap with the side that loops through the metal loop.  The FYS does not have any metal components or Velcro, and its heel strap is stitched directly into the vamp of the slipper on both sides.  *See* Exhs. 1, 3, and 5.

Additionally, the FYS has four large and distinctive ridges on the vamp. (ECF 1 ¶ 23); *see also* Exhs. 1, 3, and 5.  Just from the photo in the Complaint, one can tell that the Jeanna does not have the distinctive ridges on its vamp, but has a flat vamp.  *Compare* (ECF 1 ¶ 18 *with* ¶ 23); *see also* Exhs. 1, 3, and 5. Furthermore, unlike the FYS which does not display the UGG® brand on the vamp itself, the Jeanna has the bebe® brand etched in rhinestones on the vamp.  (ECF 1 ¶

**DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

18); *see also* Exhs. 1, 3, and 5.  The average consumer would notice these key differences between the products.

Finally, the UGG® website notes that the FYS is covered in sheepskin throughout.  *See* Exh. 1.  Meanwhile, the Jenna is made of faux fur.  *See* Exh. 3. One can see a clear difference between these materials by looking at the pictures included in the Complaint and in Exhibit 4.

Between the prominently displayed (and recognizable) brand names, to the numerous differences in design and materials between the FYS and the Jeanna, there are numerous reasons that the average consumer would not be confused as to the source of either product.  Deckers offers no facts addressing these issues or explaining *how*, in the face of these obvious differences, a consumer would be confused.

As the Seventh Circuit explained in affirming a motion to dismiss a suit under the Lanham Act "[a]llegations of consumer confusion in a trademark suit, just like any other allegations in any other suit, cannot save a claim if they are implausible." *Fortres Grand Corp. v. Warner Bros. Entertainment Inc.*, 763 F.3d 696, 700 (7th Cir. 2014).  As Judge Easterbrook explained in another case, where the allegations of confusion are implausible, a Lanham Act claim "fails at the threshold" and is "too implausible to support costly litigation." *Eastland Music Group, LLC v. Lionsgate Entertainment, Inc.*, 707 F.3d 869, 871  (7th Cir. 2013) (affirming the dismissal of a trademark claim where the allegations of customer confusion were implausible); *see also Gayle v. Allee*, No. 18 Civ. 3774, 2021 WL 120063, at *3–6 (S.D.N.Y. Jan. 13, 2021) (dismissing a *pro se* Lanham Act trademark infringement claim, for a second time, where the plaintiff failed to allege sufficient facts to state a plausible claim for customer confusion); *Applied Underwriters, Inc.. v. Lichtenegger*, 913 F.3d 884, 897 (9th Cir. 2019) (noting that while consumer confusion is often a fact issue, the confusion allegations were so

**DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

implausible that dismissal of the Lanham Act claim was warranted). "General confusion 'in the air' is not actionable" the claim must be plausible within the pleading requirements of *Twombly* and *Iqbal*. *Fortres Grand Corp.*, 763 F.3d at 700–01.

Deckers' confusion allegations are of the "in the air" variety. And they are implausible based on the clear differences in design between the two products and the prominent display of the UGG® and bebe® marks in multiple places on both products. Accordingly this Court can, and should, dismiss the trade dress claims because Deckers' fails to allege a plausible claim for customer confusion as a matter of law.

## B. DECKERS' UNFAIR COMPETITION CLAIMS FAIL AS A MATTER OF LAW OR ARE PREEMPTED.

Deckers asserts two claims for unfair competition, one statutory (under the UCL) and one under the common law (Counts III and IV). "The UCL prohibits any 'unlawful, unfair, or fraudulent business practice.'" *Fortune Dynamic*, 2015 WL 12731929 at *7 (citing Cal. Bus. & Prof. Code § 17200)). To bring a UCL claim, a plaintiff must show either an (1) "unlawful, unfair, or fraudulent business act or practice," or (2) "unfair, deceptive, untrue or misleading advertising." *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003)). Meanwhile, "[t]he common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another . . . [, or] acts analogous to 'passing off,' such as the sale of confusingly similar products, by which a person exploits a competitor's reputation in the market." *Fortune Dynamic*, 2015 WL 12731929 at *7 (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1147 (9th Cir. 1997) (internal quotation marks omitted)).

Both claims fail because they are either (a) preempted by the Patent Act; or

**DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

(b) rely upon the same legally insufficient theory of trade dress infringement as the claims in Counts I and II.  Additionally, Deckers has not alleged any facts in the Complaint to show that it has suffered the economic injury necessary to assert the UCL claim in Count III.

### 1.   THE PATENT ACT PREEMPTS BOTH UNFAIR COMPETITION CLAIMS.

The Patent Act "preempts unfair competition claims unless 'the state law claim contains an element which changes the nature of the action so that it is *qualitatively*  different from the copyright [or patent] infringement claim." *Fortune Dynamic*, 2015 WL 12731929 at *7 (quoting *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1439–40 (9th Cir. 1993) (internal quotation marks omitted, emphasis in original).  This means that the "state law must require proof of an element not shared by federal law." *Id*. (citation omitted).

While Deckers' failed to attach the Patent to its Complaint, and its allegations concerning the scope of the patent are very vague, it is clear that the Patent's claim of "ornamental design for footwear upper and midsole" encompasses the alleged FYS trade dress.  As discussed above, Deckers seeks (unsuccessfully) to protect the elements of that ornamental design through its trade dress claims, alleging that Bebe incorporates some or all of those elements in the Jeanna.  It then alleges, in support of its unfair competition claims, that Bebe has misappropriated those elements by allegedly incorporating them in the Jeanna in an effort to "misappropriate" and "exploit . . . Deckers' goodwill and reputation." (ECF 1 ¶¶ 42 and 47).  Finally, it alleges, in support of the patent infringement claim, that Bebe has sold the Jeanna which "bear[s] a design substantially similar to the ornamental design of the [FYS] Patent."  (ECF ¶ 53).  In short, the unfair competition claims and the trademark claims all allege the same basic thing: Bebe is infringing Deckers' design patent for the FYS.

This Court has rejected Deckers' attempts, in other cases, to assert unfair competition claims that simply allege that a defendant infringed one of the company's patents. *Fortune Dynamic*, 2015 WL 12731929 at *8 ("here the unfair conduct is simply Defendants' unauthorized manufacture, distribution, or sale of goods that infringe [Deckers'] patent" and therefore "the unfair competition claims premised on this theory are preempted by the Patent Act."); *Deckers Outdoor Corp. v. J.C. Penny Co.*, 45 F. Supp. 3d 1181, 1189 (C.D. Cal. 2014) ("Since Deckers has failed to point out any element of its UCL claim not shared by its federal ones, federal law preempts it."). It should do so again here. Deckers merely asserts that Bebe is infringing the "ornamental design" supposedly protected by the Patent. While these claims are false as a matter of fact, they are also preempted as a matter of law because they are not "qualitatively different" from the patent claim. *Fortune Dynamic*, 2015 WL 12731929 at *7 (quoting *Summit Mach. Tool Mfg. Corp.*, 7 F.3d at 1439–40 (internal quotation marks omitted, emphasis in original)).

### 2. THE UNFAIR COMPETITION CLAIMS ALSO FAIL AS A MATTER OF LAW BECAUSE THEY RELY ON THE SAME FAULTY TRADE DRESS THEORY AS THE TRADE DRESS CLAIMS.

The Ninth Circuit, and California federal district courts, have repeatedly held that UCL claims are "'substantially congruent' to claims made under the Lanham Act" and that the court's analysis of the latter is determinative of the former. *Sebastian Brown Productions LLC v. Muzooka Inc.*, No. 15-CV-01720, 2016 WL 949004, at *15 (C.D. Cal. Mar. 14, 2016) (dismissing UCL and common law unfair competition claims where the court determined that the plaintiff's common law trademark and Lanham Act (unfair competition) claims failed as a matter of law) (quoting *Cleary v. News Corp.*, 30 F.3d 1255, 1263–64 (9th Cir. 1995)). Where a party fails to allege valid trade dress claims under the Lanham Act, any unfair competition claims premised on the same theory also fail. *See*

17

*Aurora World Inc. v. Ty Inc.*, 719 F. Supp. 2d 1115, 1165–66 (C.D. Cal. 2009) (dismissing unfair competition claims that relied on the inadequately-plead Lanham Act trade dress claims) (citing cases); *Fortune Dynamic*, 2015 WL 12731929 at *7–8 (noting that, to the extent they were not preempted by the Patent Act, Deckers' unfair competition claims failed because they relied upon Deckers' faulty trade dress theory).  That is the case here.

Deckers' unfair competition claims both rely upon the alleged FYS trade dress and claim that Bebe misappropriated that trade dress in a way that may confuse consumers.  (ECF 1 ¶¶ 42–42, 46–47).  As discussed above, that theory fails because the alleged FYS trade dress is functional and Deckers alleges nothing suggesting that it has achieved secondary meaning.  Moreover, as discussed above, no reasonable consumer would be confused when comparing the FYS and the Jeanna side-by-side.  Accordingly, Counts III and IV fail for the same reasons as Counts I and II: there is no protectable trade dress.

### 3. DECKERS ALSO LACKS STANDING TO ASSERT ITS UCL CLAIM IN COUNT IV.

"'To have standing under California's UCL . . . plaintiffs must establish that they (1) suffered an injury in fact and (2) lost money or property as a result of the unfair competition.'"  *Brinkerhoff v. L'Oreal USA, Inc.*, 417 F. Supp. 3d 1308, 1313 (S.D. Cal. 2019) (quoting *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009); Cal. Bus. & Prof. Code § 17204).  Cognizable injuries can include: (1) surrender[ing] in a transaction more, or acquir[ing] in a transaction less, than he or she otherwise would have; (2) hav[ing] a present or future property interest diminished; (3) be[ing] deprived of money or property to which he or she has a cognizable claim; or (4) be[ing] required to enter into a transaction, costing money or property, that would otherwise have been unnecessary."  *Id*. (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 323 (2011)) (bracketed language added)).

**DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Deckers has alleged nothing of the sort in Count III.  Deckers merely alleges that it "has suffered and will continue to suffer significant injuries in an amount to be determined at trial."  (ECF 1 ¶ 43).  It offers no facts claiming that it has suffered the type of economic injury (*i.e.*, the loss of money or property) needed to state a claim under the UCL.  Accordingly, Deckers lacks standing to assert that claim.

### C. DECKERS FAILS TO SUPPORT ITS WILLFULNESS ALLEGATIONS IN ITS PATENT INFRINGEMENT CLAIM, AND THE COURT SHOULD DISMISS THAT PORTION OF COUNT V.

Under the Patent Act, the Court may "increase the damages up to three times the amount found or assessed" if the plaintiff shows that the defendant willfully infringed the patent.  *Rehrig Pac. Co. v. Polymer Logistics (Israel), Ltd.*, No. CV 19-4952-MWF, 2019 WL 8161141, at *3 (C.D. Cal. Aug. 30, 2019) (citing 35 U.S.C. § 284).  "Willfulness turns on the subjective belief of the accused infringer, measured at the time of the challenged conduct."  *Id.* (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (U.S. 2016)).  In other words, to show willful infringement and achieve enhanced damages, the plaintiff must show that that the defendant was aware of the patent before the plaintiff filed suit.

This Court has repeatedly dismissed claims for willful infringement where the plaintiff failed to plead facts demonstrating the defendant's pre-suit knowledge of the patent.  *Rehrig Pac. Co.*, 2019 WL 8161141 at *4 ("District courts have dismissed willful infringement claims for failing to establish pre-suit knowledge when plaintiffs alleged far more detailed and direct evidence that what Plaintiff alleged here.") (citation omitted); *Fortune Dynamic*, 2015 WL 12731929 at *6–7 (dismissing Deckers' patent claim insofar as it alleged willful infringement); *J.C. Penny*, 45 F.Supp.3d at 1188 (same).  That is the case here.

Deckers merely asserts the legal conclusion that "[u]pon information and belief, [Bebe's alleged] infringing acts were willful."  (ECF 1 ¶ 56).  The only fact

19

that Deckers offers to support this claim is the existence of "Deckers' pending patent marking." (*Id.*)  However, this Court rejected a similar claim by Deckers in *J.C. Penny*, holding that even if Deckers' product had "gained widespread popularity and are stamped with patent notice, those allegations, standing alone, do not establish that [the defendant] actually knew about the" patent at issue in that case. *J.C. Penny*, 45 F. Supp. 3d at 1188.  This Court reached the same conclusion when faced with nearly the same allegations, in *Fortune Dynamic*.  *Fortune Dynamic*, 2015 WL 12731929 at *7.  Because the allegations in this case are no different from those that this Court rejected in previous cases involving Deckers, it should do the same here as well.

## V.  CONCLUSION

Deckers asks this Court to accept its legal conclusions that the elements of the alleged FYS trade dress are non-functional and have achieved secondary meaning.  It also asks the Court to accept its legal conclusion that customers are confused when viewing the FYS and the Jeanna side-by-side.  Legal conclusions cannot support Deckers' claims; it must plead facts.  The lack of facts dooms the trade dress infringement claims in Counts I and II.

Furthermore, Deckers' conclusions are not even plausible.  The elements of the alleged FYS trade dress serve basic utilitarian/functional purposes and Deckers has offered nothing to suggest that these elements could serve a non-functional purpose as well.  Nor has it offered anything demonstrating how the alleged FYS trade dress has achieved secondary meaning.  Finally, Deckers' suggestion of consumer confusion is implausible because the FYS and the Jeanna prominently display the UGG® and bebe® marks in several places and have noticeably different design features.  Accordingly, Deckers' trade dress theory fails—along with its claims in Counts I and II.

Its unfair competition claims in Counts III and IV also fail.  For one, they

fail because they rely upon the same invalid trade dress theory as Counts I and II. Additionally, they contain no elements of proof that differentiate them from the patent infringement claim in Count V. Thus, the patent claim preempts them both. Furthermore, Deckers lacks standing to pursue the UCL claim (Count IV), because it fails to allege facts supporting an economic injury of any kind.

Finally, Deckers fails to allege facts showing that Bebe had pre-suit knowledge of Deckers' design patent for the FYS. Instead, it relies on the same willfulness allegations that this Court has rejected in the past. Therefore, the Court should dismiss the willfulness portion of Count V.

Dated:      July 23, 2021          O'HAGAN MEYER, PLLC

                                   /s/ Clint D. Robison
                                   Clint D. Robison (SBN 158834)
                                   Samantha Squillante (SBN 318582)
                                   Attorneys for Defendants
                                   Bebe Stores, Inc. and BB Brand Holdings LLC

**DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**